**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 17 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ROCHELLE E. CHATFIELD,

     Plaintiff-Appellant,

v.

SHILLING CONSTRUCTION
COMPANY, INC.,

     Defendant-Appellee.

No. 99-3235
(D.C. No. 97-CV-4253-RDR)
(D. Kan.)

---

**ORDER AND JUDGMENT** *

---

Before **BALDOCK** , **McKAY** , and **BRISCOE** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination

of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

*    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Rochelle E. Chatfield, appearing pro se, appeals the district court's entry of summary judgment on her race discrimination claim in favor of her former employer, Shilling Construction (Shilling). Because plaintiff has not raised a genuine issue of fact as to whether the reasons given for her termination were a pretext for discrimination, we affirm.

Plaintiff was employed by Shilling from April 1996 to October 1996. In June 1996 she was reprimanded for excessive absenteeism. In September 1996, plaintiff's car was scratched with racial slurs at work. At approximately the same time, a white coworker called plaintiff's brother, who also worked at Shilling, a racial epithet. After plaintiff threatened to beat up the coworker, the coworker gave a statement to the human resources director describing plaintiff's threat.

On October 4, 1996, the human resources director met with plaintiff about the reported threat of violence. Plaintiff acknowledged threatening the coworker. After the human resources director informed plaintiff that threats of violence were unacceptable and could result in plaintiff's termination, plaintiff responded that if the coworker ever repeated the racial epithet to her brother, plaintiff would be looking for another job because she intended to "kick [the coworker's] ass." Fritz Affidavit at 2, attached to R. doc. 27. Soon after this conversation, plaintiff was absent from work for a week.

On October 18, 1996, plaintiff was terminated from her employment. Shilling alleges that plaintiff was terminated for continuing to threaten violence against her coworker after being warned of the consequences, and for excessive absenteeism. Shilling also presented evidence that the coworker was terminated on the same day for making the racial slur to plaintiff's brother, although this is disputed by plaintiff.

Plaintiff filed a discrimination action with the Kansas Human Rights Commission, alleging that she was terminated because of her race and age. After the Commission found no probable cause to believe that plaintiff's termination was motivated by discriminatory intent, plaintiff filed this action in the federal district court. During the action, plaintiff indicated she no longer claimed she was terminated because of her age. The district court granted summary judgment on plaintiff's race discrimination claim in favor of her former employer, finding that plaintiff's evidence did not create a triable issue as to whether Shilling's reasons for terminating her were pretextual. This appeal followed.

We review the district court's grant of summary judgment de novo, applying the same legal standard as that applied by the district court. See Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1313 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We examine the factual record and draw reasonable inferences therefrom in a light most favorable to the nonmoving party. See Bullington , 186 F.3d at 1313.

A plaintiff alleging that she was terminated based on her race must show, either directly or indirectly, that the decision was motivated by intentional racial discrimination. See Kendrick v. Penske Transp. Servs., Inc. , 220 F.3d 1220, 1225 (10th Cir. 2000). Direct evidence is that which does not require an inference to prove discrimination, such as oral or written statements by an employer showing a discriminatory motive. See id. In this case, plaintiff has not identified any document or statement directly linking her termination to her race. [1]

Indirect evidence of discrimination is analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green , 411 U.S. 792, 802-04 (1973). See Perry v. Woodward , 199 F.3d 1126 (10th Cir. 1999), cert. denied , 120 S. Ct. 1964 (2000). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of wrongful termination, by showing

---

[1]     It is true that the conduct for which plaintiff was fired tangentially involved race in that plaintiff was threatening violence if her coworker repeated a racial epithet. This is not the same as terminating plaintiff *because* of her race, however. Shilling's documents and the human resources manager's statements show that plaintiff was terminated for the conduct of threatening violence against a coworker after being admonished that such behavior could result in termination, without regard to the underlying reason for plaintiff's threat.

that: "(1) she belongs to a protected class; (2) she was qualified for her job; (3) despite her qualifications, she was discharged; and (4) the job was not eliminated after her discharge." Id. at 1135. Upon such a showing, a rebuttable presumption arises that her discharge was motivated by unlawful discrimination. The burden then shifts to the employer to rebut the presumption by articulating a legitimate, nondiscriminatory reason for the termination. Thereafter, the burden reverts to the plaintiff, who may avoid summary judgment only by showing that a factual dispute exists whether the employer's articulated reason was pretextual. See id.

Here the district court assumed that plaintiff made her prima facie case and focused instead on the employer's proffered reasons for the termination and on plaintiff's evidence that such reasons were a pretext for discrimination. The court held, and we agree, that Shilling's reasons for terminating plaintiff–threats of violence against a coworker and excessive absenteeism–were legitimate, nondiscriminatory reasons. See, e.g., Clark v. Runyon, 218 F.3d 915, 919 (8th Cir. 2000) ("Both actual violence against fellow employees and threats of violence are legitimate reasons for terminating an employee."); Aramburu v. The Boeing Co., 112 F.3d 1398, 1403 (10th Cir. 1997) (holding employee's excessive absenteeism is a legitimate, nondiscriminatory reason). We examine then whether plaintiff's evidence of pretext was sufficient to create a triable issue of fact.

A plaintiff demonstrates pretext by showing "either that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence." Bullington, 186 F.3d at 1317 (further quotation omitted). Here, plaintiff relies on the fact that she was terminated immediately from work, while her white coworker, who uttered the racial epithet, was not.[2] We note that plaintiff does not dispute that the coworker was discharged for making the racial slur. Accepting plaintiff's contention that Shilling waited several weeks to discharge the white coworker, we do not believe an employer's decision to immediately discharge an employee who makes a belligerent threat of violence, while delaying for a short while the termination of a coworker who uses a racial epithet, is sufficient to show pretext, where it is undisputed that, in the end, both received the same discipline. In addition, there has been no showing that the white coworker had the same record of absenteeism as that of plaintiff, who was terminated after being absent for a week following a warning about her excessive absences.

---

[2]    The timing of the white coworker's discharge is hotly contested in this case. In her deposition, plaintiff alleges that the white coworker was not terminated until several weeks after plaintiff's discharge. In response, Shilling submitted several affidavits attesting that the coworker was terminated on the same day as plaintiff, and submitted a termination letter signed by the coworker on October 18, 1996. Because this is a summary judgment, however, we accept plaintiff's version of the facts as true.

The other circumstances identified by plaintiff do not demonstrate that she was terminated based on her race. Neither the coworker's racial statement nor the alleged defacement of plaintiff's car can be attributed to the employer, but were the acts of private individuals. The undisputed evidence is that the employer did not condone such acts, calling the police to investigate the car vandalism, and discharging the coworker for her racial comment. Plaintiff's claim regarding the damage to her feet from the job is irrelevant to her claim of racial discrimination. Even assuming plaintiff's physical condition could somehow justify her excessive absenteeism, the undisputed evidence shows that Shilling did not know of this condition, and thus the evidence does not demonstrate that Shilling's reliance on plaintiff's absences was a pretext for racial discrimination.

The judgment of the United States District Court for the District of Kansas is AFFIRMED.

Entered for the Court

Monroe G. McKay
Circuit Judge