**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 6 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MINA LUNDIEN,

       Plaintiff-Appellant,

v.

UNITED AIRLINES, a corporation,

       Defendant-Appellee.

No. 00-1083
(D.C. No. 98-WM-1651)
(D. Colo.)

---

**ORDER AND JUDGMENT** *

---

Before **TACHA** , **EBEL** , and **BRISCOE** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

Plaintiff-appellant Mina Lundien appeals from the district court's order

granting summary judgment in favor of defendant United Airlines (United) in her

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

action claiming that United demoted her on the basis of gender in violation of Title VII and in retaliation for her complaint of disparate treatment. We affirm the district court's grant of summary judgment on plaintiff's retaliation claim. Because the record indicates that plaintiff made a prima facie showing of gender discrimination under Title VII and offered sufficient evidence of pretext to create a genuine dispute of material fact as to the validity of United's articulated reason for demoting her, however, we reverse the grant of summary judgment on her Title VII discrimination claim.

## I. Background

The evidence and all reasonable inferences derived therefrom are presented here in a light most favorable to the plaintiff, as the nonmoving party. *See Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1313 (10th Cir. 1999). Plaintiff was hired by United in 1991 as a part-time ramp serviceworker. One year later, she was promoted to ramp team leader at United's Denver terminal, a management position. Her responsibilities included supervising the loading and unloading of baggage onto airplanes. Only three of United's thirty-six ramp team leaders in Denver were women. Plaintiff informally complained to supervisors on at least two occasions that she believed she was being treated less favorably because she was a woman; however, she never filed formal complaints with United alleging discrimination.

Plaintiff was demoted from her job and precluded from all management positions with United after an August 13, 1997 incident. Plaintiff was called to investigate two packages that had been loaded on a flight from Houston to Colorado Springs, and were now stopped-over in Denver. One package, a bucket, had opened during the flight, spilling its contents of shotgun shells. The passenger who had checked the bucket had also checked a forty-two pound box. The box had two warning labels on it, one stating it contained flammable explosives, the other stating it contained black powder, but this second label was crossed out with black marker. Plaintiff asked one of her employees, William Peterson, to find out what the rules were concerning the handling of these two packages. She also asked that the passenger be brought to the boarding gate in the terminal so that she could speak with him about the packages.

The passenger was waiting inside the gate when plaintiff arrived to interview him. He confirmed the packages were his, and explained that he was a member of the United States Olympic shooting team. The passenger told plaintiff that the box was mislabeled and contained more shotgun shells, not flammable explosives or black powder. United usually allowed passengers to check only eleven pounds of ammunition. In December 1995, however, United had granted a variance to the U.S. Olympic shooting team, effective until January 1998, allowing team members to check up to two fifty-pound boxes of shotgun shells.

This variance was on file with United at the time, applied to this passenger, and was noted on his passenger name record (PNR) in United's computer. *See* Appellant's App., Vol. II, 226-28, 235. Plaintiff told the passenger the open bucket had to be removed from the flight because it was improperly packaged. Based on the passenger's statements, however, plaintiff determined that the second package could remain on board.

In the meantime, Peterson had called United's training department, which advised him to hold both packages off the flight for further inspection. It appears from the record that neither Peterson nor the training department were aware at that time that the passenger was a member of the Olympic shooting team with a variance allowing him to check up to 100 pounds of ammunition. When plaintiff returned and told Peterson the box could remain on the flight, he protested. Believing that the package violated United's usual eleven-pound limit, Peterson instructed the gate crew not to load either package. However, when plaintiff returned to the gate, she removed the flammable explosive label from the box based on the passenger's representations, and ordered the crew to load it. When Peterson heard about this, he called the pilot and told him that the package exceeded United's weight limit for ammunition. *Id.* Vol. I at 148. The pilot instructed Peterson to remove the package. Peterson filed a report the next day with United claiming that plaintiff had violated United's eleven-pound weight

limit.  United concedes that the box was, in fact, properly packaged and did not contain any hazardous materials.     *Id*. Vol. II, at 289.

United's Ramp Manager, Deborah Garner, investigated this incident. Plaintiff testified that during the investigation she repeatedly asked what rule or policy she was alleged to have violated, but United did not cite any.  Plaintiff testified that all of Garner's questions focused on the eleven-pound weight limitation for ammunition.  A ramp team leader who was involved in the investigation, Rich Feller, testified that the only reason he heard given to plaintiff as to why her actions were wrong was the claimed violation of United's eleven-pound weight limitation.  However, Garner was informed about United's variance for Olympic team members during the investigation.     *Id*. at 230.

At the conclusion of the investigation, Garner recommended to Rodney Gonzales, a manager in United's "People Services" department, that plaintiff be removed from all safety-related management positions.  Plaintiff then spoke with Gonzales and said she hoped "that this [was] not an example of disparate treatment."  *Id*. at 269.  Gonzales determined that plaintiff should be removed from all management positions with United.  In Garner's letter demoting plaintiff she stated only that plaintiff had exercised "poor judgment" and that her actions were "inappropriate."    *Id*. at 222.  The letter did not explain how plaintiff had exercised poor judgment, nor did it claim that plaintiff had violated any of

-5-

United's rules or policies.  Plaintiff was placed on thirty-days' paid administrative leave and told that she would be terminated if she was unable to secure a nonmanagement position with United within ninety days.  Plaintiff applied for two jobs with United during this period, but was not hired for either and, therefore, was terminated from employment in December 1997.

Plaintiff filed a discrimination claim with the Equal Employment Opportunity Commission, which issued plaintiff a right-to-sue letter.  Plaintiff then filed a timely complaint in federal court alleging that United demoted and terminated her based on gender discrimination and in retaliation for her complaints of disparate treatment.  Plaintiff's complaint also asserts pendent state law claims for discrimination, breach of contract, and promissory estoppel, but plaintiff has not raised these claims on appeal; thus, they are deemed waived.  *See Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272, 1277-1278 (10th Cir. 1994).  The district court granted United's motion for summary judgment, ruling that plaintiff had failed to present evidence that her demotion was motivated, at least in part, by her gender.  Appellant's App., Vol. IV at 684.

## II. Analysis

### A. Standard of Review

"We review the district court's grant of summary judgment de novo, applying the same legal standard as the court below." *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In applying this standard, we examine the factual record and draw reasonable inferences therefrom in a light most favorable to the nonmoving party." *Munoz*, 221 F.3d at 1164.

### B. *McDonnell Douglas*

Plaintiff relies on indirect evidence to support her claim of unlawful discrimination. Thus, we analyze her claim using the three-step, burden-shifting framework first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000).

> Under the *McDonnell Douglas* framework, the plaintiff must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. Once the plaintiff has established a prima facie case, the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for its employment action.

If the defendant makes this showing, the plaintiff must then show that the defendant's justification is pretextual.

*Id.* (quotations omitted).

### 1. Prima Facie Case and Legitimate, Nondiscriminatory Explanation

To establish a prima facie case of discriminatory discipline or demotion, a plaintiff must show that she was (1) a member of a protected group, (2) qualified for the job, (3) despite her qualifications, she was demoted from the position, and (4) the job was not eliminated after her demotion. *See Perry v. Woodward*, 199 F.3d 1126, 1135 (10th Cir. 1999), *cert. denied*, 120 S. Ct. 1964 (2000). United does not dispute that plaintiff established a prima facie case of discrimination.

The burden then shifted to United to articulate a legitimate, nondiscriminatory reason for demoting plaintiff. United's proffered justification is that plaintiff "made a series of highly questionable decisions with potentially very serious safety ramifications, causing Ms. Garner to lose confidence in her ability to lead her workforce." Appellant's App. Vol. I, at 99. Plaintiff does not dispute on appeal the district court's conclusion that United's explanation satisfies its second-stage burden. *See EEOC v. Flasher Co.*, 986 F.2d 1312, 1316 (10th Cir. 1992) (defendant need only articulate through some proof a facially

-8-

nondiscriminatory reason; it need not litigate the merits of the reasoning at this stage of the proceeding).

## 2. Evidence of Pretext

If a plaintiff "presents evidence that the defendant's proffered reason for the employment decision was pretextual-i.e. unworthy of belief, the plaintiff can withstand a summary judgment motion and is entitled to go to trial." *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir.1995); *see also Reeves v. Sanderson Plumbing Prods., Inc*., 120 S. Ct. 2097, 2109 (2000) (holding that "a prima facie case and sufficient evidence to reject the employer's explanation may permit a finding of liability"). Plaintiff contends, correctly, that the district court applied an incorrect legal standard at the third stage of the *McDonnell Douglas* analysis in evaluating her evidence of pretext. Citing an Eleventh Circuit articulation of the standard, the district court ruled that even if plaintiff had presented evidence that her actions on August 13, 1997, complied with United's rules and regulations, and that her demotion was based on erroneous facts, she failed to establish pretext because she did not present "evidence indicating that her demotion was motivated, at least in part, by her gender." Appellant's App. Vol. IV, at 684. This is a "pretext-plus" test, which the Supreme Court recently rejected in *Reeves*, 120 S. Ct. at 2109, and which this court previously rejected in *Randle,* 69 F.3d at 451-53 & 452 n.16 (citing *St. Mary's Honor Ctr. v. Hicks*, 509

-9-

U.S. 502, 507 (1993)). Because a showing of pretext, in itself, is all that is required to raise the inference of discriminatory intent, and no additional showing of actual discriminatory animus is necessary, the district court incorrectly evaluated plaintiff's evidence.

Plaintiff further contends she presented sufficient evidence of pretext to withstand summary judgment. We agree. She presented evidence that United's proffered justification for demoting her is suspect because it gave only a vague and subjective explanation for its action, and never specified what plaintiff did wrong. She also showed that after she filed her complaint, United gave explanations that were not the subject of the disciplinary investigation and were not consistent with its standard policies and procedures. After reviewing the admissible evidence plaintiff presented in response to United's motion for summary judgment, we conclude that plaintiff has shown that a jury could reject United's proffered explanation. *Hicks*, 509 U.S. at 511. [1]

---

[1] United contends that much of the evidence presented by plaintiff is insufficient to withstand summary judgment because it is inadmissible hearsay; generalized, unsupported opinions; speculation and conjecture; or states legal conclusions. Some of plaintiff's evidence, particularly her evidence that female ramp team leaders were treated less favorably than their male counterparts, is hearsay or general opinions unsupported by facts. In assessing plaintiff's evidence, we have considered only that evidence which we have concluded to be admissible in a summary judgment proceeding. *See Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995) (describing admissible evidence under Rule 56).

A plaintiff can show pretext by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quotations omitted).

> [T]he evidence which a plaintiff can present in an attempt to establish that a defendant's stated reasons are pretextual may take a variety of forms. . . . A plaintiff may not be forced to pursue any particular means of demonstrating that a defendant's stated reasons are pretextual. A plaintiff typically makes a showing of pretext in one of three ways: (1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff.

*Kendrick*, 220 F.3d at 1230 (citations, quotation and alterations omitted).

Plaintiff's evidence indicates that the explanation proffered by United for the discipline is subjective and vague. The only explanation given by United at the time of the discipline was its statement that plaintiff exercised poor judgment and acted inappropriately, and that Garner had lost confidence in her. There is nothing in the record to indicate that United told plaintiff how it is that she exercised poor judgment or acted inappropriately or why Garner lost confidence in her. Rich Feller, the ramp team leader who participated in the investigation, testified that plaintiff was told the basis of the demotion was that the ammunition

weighed too much; that there was a "safety issue" with the shipment; and that plaintiff had "broken the trust." Appellant's App., Vol III at 396-98. Months later, when plaintiff applied for unemployment benefits after her termination, the Colorado Department of Labor and Employment was unable to obtain from United any explanation as to why plaintiff was discharged, and made a finding in February 1998 that plaintiff was discharged "without being given a reason." *Id.* Vol. II at 224.

The use of subjectivity in the decision-making process can create a "strong" inference of bias if the plaintiff shows a significant disparity in the representation of a particular group. *Bauer v. Bailar*, 647 F.2d 1037, 1045 (10th Cir. 1981). Here, only three of United's thirty-six ramp team leaders in Denver were women, clearly a significant disparity in representation. United does not contend that plaintiff actually violated any of its rules. Appellee's Br. at 32. Without its subjective explanations that Garner "lost confidence" in plaintiff because she exercised "poor judgment," United cannot account for why it demoted and ultimately terminated plaintiff.

Plaintiff presented evidence indicating that United gave shifting explanations for what plaintiff did wrong. *See Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1380-81 (10th Cir. 1994). Plaintiff testified that during the investigation, all Garner implied that she had done wrong was allow a passenger

to board more than eleven pounds of ammunition. Appellant's App. Vol. II at 214-15. Similarly, Rich Feller testified that the only reason he heard given to plaintiff for the disciplinary action related to the claimed weight violation. *Id.* Vol. III at 396. Garner was made aware of the Olympic team variance only days after the incident. Yet, even during her deposition, Garner first stated it was a safety violation for plaintiff to allow the forty-two pound box to remain on board because of United's eleven-pound weight limit for ammunition. *Id*. Vol. II at 286-87. Under further questioning, however, Garner conceded that the box was permitted on board under United's Olympic team variance, and that there was no violation of the weight limit. *Id*. at 297.

Although the evidence indicates that United focused exclusively on the package's weight during its investigation, and never gave plaintiff a specific reason for her demotion, Garner gave new, specific reasons for demoting plaintiff after plaintiff filed her complaint. Garner testified during her deposition that plaintiff failed to ask the passenger for identification or to get documentation of United's weight variance; failed to obtain "hazardous material" paperwork for the box; was required to verify that the box did not contain hazardous materials by some means other than simply asking the passenger--such as by opening it and visually inspecting its contents or by asking the passenger to open it; and that she lacked authority to remove the hazardous material sticker from the box.

Appellant's App. Vol. II at 287, 290-92. Yet, United's motion for summary judgment did not claim that any of these specific explanations offered by Garner during her deposition were, in fact, why United demoted plaintiff. United cited these reasons for the first time in its reply brief to the motion for summary judgment. Even on appeal, United never claims these specific explanations constitute its legitimate nondiscriminatory reason for demoting plaintiff. Although United states in its recitation of the facts that plaintiff failed to obtain verification of the passenger's identification and did not open the box to verify its contents before removing the hazardous material sticker, it does not claim that these actions violated any of United's rules or policies. A rational factfinder could conclude from United's subjective and shifting explanations that its proffered justification for demoting plaintiff is false.

Moreover, plaintiff presented additional evidence that Garner's explanations are false and that all of plaintiff's actions with respect to loading the second package were permitted under United's rules and normal practices. With respect to the claim that plaintiff was required to check the passenger's identification and verify that he was a member of the Olympic shooting team, Feller testified that this issue never came up during the investigation. *Id*. Vol. III at 396. Further, United does not dispute that the passenger had already been identified by other United employees when plaintiff arrived at the boarding gate

-14-

to interview him. United does not dispute that the weight variance was on file with United and listed on the passenger's PNR on United's computer, nor does it claim plaintiff was required by any rule or policy to verify independently the passenger's identification.

With respect to verifying the contents of the box and removing the hazardous material label, Garner conceded during her deposition that there is no United rule requiring plaintiff to have opened the box in order to verify its contents. *Id*. Vol. II at 290-91. Although Garner claimed that plaintiff was not permitted to remove the sticker from the box herself, and that only the shipper can remove the label, she was unable to point to any rule in support of this claim and acknowledged that United's rules state that items offered as baggage with a hazardous material label are required to have the label removed if the contents are not dangerous. *Id*. at 307-08. United's safety policies provide that a hazardous material label should be removed if the contents are not dangerous. *Id.* at 232-33; Vol. III at 448-49. Plaintiff testified that she was taught that it was a ramp team leader's responsibility to remove a hazardous material label if the contents were not hazardous. *Id.* Vol. II at 216-17.

Rich Feller testified that it is normal practice for ramp team leaders to ascertain the contents of a package by simply asking the passenger what is inside, and that it is not normal practice to open a package to check its contents. *Id*.

Vol. III at 374-75. He testified that if a package has a hazardous materials label on it, United's rules do require a ramp team leader to ascertain what is in the package, but permit any number of methods for doing so, including interviewing the passenger and asking him or her what is inside the box, checking with the terminal where the package was originally boarded, or opening the box. *Id*. Vol. I at 135-36, Vol. III at 375-76, 379-81. Walt Harris, an operating ramp manager since 1984 and a ramp team leader since 1974 testified that, to his knowledge, a team leader could verify the contents of a package marked with a hazardous materials label by verbal discussion with the passenger and that there is no requirement that the team leader open the box. *Id.* Vol. III at 435, 438-39.

Michael Pijanowski, a ramp safety instructor for six years, testified that he was trained that a ramp team leader was supposed to remove a hazardous materials label if the package was verified as not being dangerous, and that he teaches ramp team leaders that they can remove the label if they discuss the contents of the box with the customer. *Id*. at 456-58. He testified that it is regular, everyday practice to take the passenger's word for what is in a package. *Id*. at 459-60. Pijanowski testified that he has never been instructed that a ramp team leader must open such a package in order to verify its contents; indeed, that he has been instructed not to open such a package. *Id*. Thomas Hushion, a ramp team leader for fourteen years, testified that it was routine procedure for ramp

-16-

team leaders to remove a sticker on a package if the passenger said the sticker did not match the contents, and that he was not aware of any United requirement that ramp team leaders open a package to verify its contents unless he or she was suspicious of the passenger's answers. *Id*. at 417-20. Even Peterson, who filed the report on the August 13 incident, testified it was his understanding that ramp team leaders could remove labels if they did not match the contents. *Id*. Vol. II at 349.

Plaintiff also presented evidence that it was not United's normal practice to demote a ramp team leader for a safety violation. It is undisputed that no ramp team leader has ever been demoted for a safety-related violation. Peterson testified that in his experience, ramp team leaders improperly load radioactive or hazardous material onto a plane approximately once every two weeks, and that United's only discipline is to talk to the ramp team leader about the problem. *Id*. at 341-43. Feller testified that United's demotion of plaintiff was the most severe discipline he had ever seen during his employment for a violation of this nature, compared to many similar incidents of which he was aware. *Id*. Vol. III at 391-92. Feller testified that he was aware of numerous ramp team leaders who had exercised poor judgment with respect to safety-related matters and that it was United's normal practice to simply talk to the ramp team leader about the problem, or require them to take additional retraining. *Id*. at 385-86, 400-01.

Pijanowski, the ramp safety instructor, testified that he filed a safety report and brought to United's attention, on "almost a daily basis for a long time," the fact that numerous male ramp team leaders were parking motorized vehicles directly under the vents in the wings of aircraft during the refueling operation. *Id*., Vol. III at 463-64. He testified that is a very serious safety violation that could result in an explosion, but that Garner told him she was ordering the ramp team leaders be briefed about the problem, and that none of the ramp team leaders were ever disciplined for this violation. *Id*. at 463-65.

In sum, contrary to the standard applied by the district court in evaluating plaintiff's evidence, a jury may infer discriminatory animus from "the simple showing of pretext," and it may find illegal discrimination upon a prima facie case and pretext. *Randle*, 69 F.3d at 451. Further, plaintiff produced sufficient admissible evidence of "weaknesses, implausibilities, inconsistencies, incoherencies, [and] contradictions" in United's proffered reasons for demoting her and excluding her from all management positions for a reasonable factfinder to reject United's explanation for demoting her, and hence infer that United did not act for the asserted non-discriminatory reasons. *Morgan*, 108 F.3d at 1323; *see also Reeves*, 120 S. Ct. at 2109. Thus, the district court erred in granting summary judgment in United's favor on plaintiff's Title VII claim of gender discrimination.

## C. Retaliation Claims

Plaintiff also claims that she was demoted from all management jobs in retaliation for her complaints of gender discrimination. Title VII retaliation claims are analyzed under the same *McDonnell Douglas* burden-shifting analysis, and, thus, to establish a prima facie case of retaliation, plaintiff must show that: 1) she was engaged in protected opposition to Title VII discrimination, 2) she was subject to adverse employment action, and 3) there is a causal connection between the protected opposition and the adverse employment action. *Kelley v. Goodyear Tire & Rubber Co* ., 220 F.3d 1174, 1179 (10th Cir. 2000).

We conclude that plaintiff has failed to make out a prima facie case of retaliation. As support for her retaliation claim, plaintiff points to her remark to Gonzales during the ammunition package investigation that she hoped the proposed disciplinary action was not an example of disparate treatment. Her statement was immediately followed by Gonzales' decision to demote plaintiff not just from safety-related management positions, as recommend by Garner, but from all management positions. Complaints to management, even informally, can under some circumstances be sufficient to invoke the participation clause. *Jeffries v. Kansas* , 147 F.3d 1220, 1231 & n. 9 (10th Cir. 1998). Plaintiff's isolated remark that she hoped this was not an example of disparate treatment falls short, however, of being considered protected conduct. Her statement was

simply a conclusory remark, without sufficient detail for Gonzales or United to know what to investigate. Thus, the district court correctly granted summary judgment in favor of United on plaintiff's Title VII retaliation claim.

AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this order and judgment.

Entered for the Court


Mary Beck Briscoe
Circuit Judge