**Ernest N. LEWIS, Jr., Plaintiff,**

v.

**STANDARD MOTOR PRODUCTS, INC., a/k/a Champ Services Line, Defendant.**

**No. 01–2053–JAR.**

United States District Court, D. Kansas.

April 22, 2002.

Ernest N. Lewis, Jr., Kansas City, KS, Pro se.

Carl A. Gallagher, Patrice M. Brown, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, Bud G. Holman, Paul F. Doyle, Kelley, Drye & Warren LLP, New York City, for Defendant.

## *MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

ROBINSON, District Judge.

This is before the Court on Defendant Standard Motor Products, Inc.'s motion for summary judgment filed on February 26, 2002 (Doc. 18). Plaintiff, appearing pro se, has not responded. Plaintiff's complaint alleges race discrimination, harassment, retaliation and conspiracy.

### *UNCONTROVERTED FACTS*

The uncontroverted facts [1] are as follows:

1. These are the facts set forth by Defendant, which are deemed admitted due to Plaintiff's

Ernest N. Lewis, Jr. ("Plaintiff") was employed by Standard Motor Products, Inc. a/k/a Champ Services Line ("Defendant"), from November 4, 1985 to July 20, 2000. Plaintiff was a member of United Auto Workers ("UAW") Local #710. Plaintiff was a Union Chairperson at Defendant's Edwardsville, Kansas plant from 1988 until 2000, approximately twelve years. Plaintiff worked in Defendant's electrical terminal department as a material handler and packager. The electrical terminal department was managed and supervised by Ron Williams and Steve Domann. Steve Domann was Plaintiff's supervisor.

Plaintiff was the elected Commissioner for the Fourth District of the Unified Government of Wyandotte County, Kansas. On or about January 5, 1999, Defendant entered into a special arrangement with Plaintiff which allowed him to conduct government business without assessing points for absences if prior notification was given.

Pursuant to company policy, when mandatory overtime is scheduled, it is posted by the time clock and on the official company bulletin board. An employee who fails to come to work when mandatory overtime is scheduled, is assessed five points under the attendance policy. If the employee calls in to report his or her absence from the mandatory overtime, three points are assessed. Overtime had been posted for an upcoming Saturday and Plaintiff was not aware of the posting and did not work the overtime. Plaintiff was assessed five points for not working the Saturday overtime. Plaintiff informed management that he had an excuse for missing the Saturday overtime and the five points were removed from his record.

In June 2000, Plaintiff and Kenny Lynch filed for the nomination of Union Chairperson in Defendant's Edwardsville, Kansas plant. During the election period, the parties would conduct a campaign. Plaintiff and Kenny Lynch had equal access throughout the plant to the union members during the election period. The union election was held on July 19, 2000 and Plaintiff was defeated by a vote of the union members.

On or about July 13, 2000, Cindy Adkins approached Steve Simmons, Defendant's Human Resources Manager, and informed him she had been sexually harassed by Plaintiff at a union investigation meeting earlier that day. Ms. Adkins provided Steve Simmons with a written statement detailing the incident between herself and Plaintiff. Plaintiff was not at the plant on July 14 because he was going to North Carolina for a commissioners' conference.

On July 14, 2000, Steve Simmons attempted to reach Claude Thornton, International Representative for Local UAW #710, to inform him of the allegations against Plaintiff. Steve Simmons began an investigation into the allegations of Ms. Adkins by speaking with Don Wakefield and Ron Williams, managers at the plant. On July 17, 2000, Mr. Thornton spoke with Mr. Simmons and learned of the complaints of sexual harassment against the Plaintiff. Steve Domann informed Steve Simmons that he was aware of two other females who had been sexually harassed by Plaintiff. Don Wakefield also informed Steve Simmons of one other female who had been harassed by Plaintiff. On July 18, 2000, Steve Simmons met individually with each of these three women. These women provided written statements detailing the incidents of sexual harassment by Plaintiff. These women had not come forward earlier because they believed Plaintiff, as the union chairperson, would cause them to suffer.

failure to respond. D. Kan. Rule 56.1(a).

On July 18, 2000, Claude Thornton spoke with Plaintiff and learned he would be back at the plant on July 19, 2000. Under the terms of the labor contract between UAW Local 710 and Defendant, Claude Thornton and Steve Simmons scheduled a disciplinary meeting with Plaintiff for July 19. Plaintiff did not call in to work on July 19 and also failed to report to work that day. The disciplinary meeting was rescheduled for July 20, 2000.

Because of the multiple allegations of sexual harassment against Plaintiff, Defendant terminated Plaintiff's employment on July 20, 2000.[2] Other employees of Defendant have been terminated for fewer allegations of sexual harassment than Plaintiff.

## CONCLUSIONS OF LAW

**Summary Judgment:**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[3] A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."[4] An issue of fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.[5] The moving party bears the initial burden of showing that there is an absence of any genuine issue of material fact.[6] Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof."[7] The nonmoving party may not rest on its pleadings but must set forth specific facts.[8] The Court determines "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."[9] In making such a determination, the Court should not weigh the evidence or credibility of witnesses. In determining whether any genuine issues of material fact exist, the Court must construe the record liberally in favor of the party opposing the summary judgment.[10] If an inference can be deduced from the facts that would allow the nonmovant to prevail, summary judgment is inappropriate.[11]

2. In his deposition, Plaintiff argues that there is a black-white issue and states that he is black and the four women that came forward were white. Then when asked how many [women] they talked to in the plant, Plaintiff answers that "They must not have talked to any others because if that would have been the case, then they should have maybe had more accusations." This statement has not been controverted or clarified since Plaintiff did not respond to the summary judgment motion.

3. Fed.R.Civ.P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1538–39 (10th Cir. 1993).

4. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

5. *Id.* at 248, 106 S.Ct. 2505.

6. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hicks v. Watonga*, 942 F.2d 737, 743 (10th Cir. 1991).

7. *Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) (citing *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548).

8. *Id.*

9. *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

10. *McKibben v. Chubb*, 840 F.2d 1525, 1528 (10th Cir.1988) (citation omitted).

11. *United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986) (citation omitted).

### Race Discrimination (Title VII, § 1981, K.S.A. § 44–1001 et seq.[12]): [13]

■ A plaintiff that alleges race discrimination may prove intentional discrimination through either direct evidence of discrimination or indirect (circumstantial) evidence of discrimination.[14] For claims that lack direct evidence of discriminatory motive, the Court is bound by the framework for assessing circumstantial evidence that is set out in *McDonnell Douglas Corp. v. Green.*[15] *McDonnell–Douglas* provides a three-step, burden-shifting process by which to evaluate a plaintiff's claims. First, a plaintiff must establish a prima facie case of discrimination.[16] Plaintiff may establish a prima facie case by showing that: (1) he belongs to a protected class; (2) he was qualified for his job; (3) despite his qualifications, he was discharged; and (4) the job was not eliminated after his discharge.[17] In the case, Plaintiff has established a prima facie case.

■ Once a plaintiff establishes a prima facie case, the burden shifts to the defendant, who must offer a legitimate, nondiscriminatory reason for the adverse action.[18] Here, Defendant has met this burden by stating that the reason for Plaintiff's termination was the sexual harassment claims. Since Defendant has met its burden, the presumption of discrimination drops from the case and Plaintiff must show that the Defendant's justification is pretextual.[19]

A plaintiff typically makes a showing of pretext: (1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff.[20] To

---

**12.** This is the Kansas Act Against Discrimination (KAAD). It appears as though Plaintiff may not have fully exhausted his administrative remedies. In his complaint he mentions that he dually filed his EEOC charge with the Kansas Human Rights Commission. He received a Right to Sue letter from the EEOC, but he doesn't mention that he received a ruling from the Commission. *See Van Scoyk v. St. Mary's Assumption Parochial School,* 224 Kan. 304, 306, 580 P.2d 1315 (1978) (stating that recourse must first be made to the Commission by an aggrieved individual, and the administrative remedies must be exhausted before recourse to the courts). The Court will not address this issue because the Court finds there was no discrimination in this case.

**13.** The standards are the same for Title VII, § 1981 and the KAAD. *See Best v. State Farm Mutual Automobile Ins. Co.,* 953 F.2d 1477, 1480 n. 2 (10th Cir.1991) (noting that the Kansas Supreme Court is entitled to refer to Title VII, even though it was enacted after the KAAD, when it interprets the KAAD, and that court is then obliged to follow that interpretative tool as adopted by the Kansas Supreme

Court); *see also Carreno v. IBEW Local No. 226,* 1990 WL 159199 (D.Kan.1990) (district court applied Title VII standards to KAAD claim because Kansas courts have done so); *see Perry v. Woodward,* 199 F.3d 1126, 1135 (10th Cir.1999) (noting that the *McDonnell Douglas* framework used for Title VII claims applies equally to claims brought pursuant to § 1981).

**14.** *Kendrick v. Penske Transportation Servs., Inc.,* 220 F.3d 1220, 1225 (10th Cir.2000) (citations omitted).

**15.** 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

**16.** *See id.* at 802, 93 S.Ct. 1817.

**17.** *Kendrick,* 220 F.3d at 1229 (citing *Perry,* 199 F.3d at 1138).

**18.** *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817.

**19.** *See id.* at 804, 93 S.Ct. 1817.

**20.** *Kendrick,* 220 F.3d at 1230.

show that the defendant acted contrary to unwritten policy or to company practice, a plaintiff often provides evidence that he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness.[21]

Plaintiff believes that Defendant made the allegations of sexual harassment a black-white issue because the four women that came forward were Caucasian and some of the allegations had occurred in prior years. The three women that later provided written statements regarding sexual harassment by Plaintiff in the past had previously not done so because they were afraid of what Plaintiff could do given his position as union chairperson.[22] Other employees of Defendant had been terminated for fewer allegations of sexual harassment than those against Plaintiff. Plaintiff has not shown that he was treated differently from other similarly-situated, nonprotected employees who violate work rules of comparable seriousness.[23] Plaintiff's only evidence is his subjective belief that his termination was motivated by racial animus.[24] Plaintiff's feeling that he has been the victim of racial discrimination fails to demonstrate a genuine issue of fact absent supporting evidence.[25] Plaintiff has not put forth sufficient evidence to create a genuine issue of material fact on the issue of pretext. Therefore, Defendant is entitled to summary judgment on Plaintiff's claim of racial discrimination.

## Retaliation:

 The *McDonnell Douglas* framework is also used to evaluate retaliation claims.[26] "A plaintiff establishes a prima facie case of retaliation by showing: (1) he or she engaged in protected opposition to discrimination; (2) he or she was subject to adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action." [27]

In his Complaint, Plaintiff states that on or about June 12–13, 2000, he complained to management, including the plant manager and human resources, that he believed he was being singled out, harassed and/or discriminated against with respect to his employment and actions being taken by the company on the basis of his race. On July 20, 2000, Plaintiff was terminated from his employment. If Plaintiff satisfies the prima facie requirements, then the case enters the second stage, and the burden of production moves to the defendant to present "a legitimate, nondiscriminatory reason" for its action.[28] Defendant has shown that other individuals were terminated with fewer complaints than Plaintiff, were not in positions of authority, were subject to disciplinary meetings and were subsequently terminated. As stated

**21.** *Id.* (citation omitted).

**22.** *See id.* (citing *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir.1998) (finding that plaintiff failed to establish pretext where the defendant discharged plaintiff after conducting an investigation into a subordinate employee's allegations of sexual misconduct on the part of the plaintiff and believed the allegations to be true, even though plaintiff presented evidence that the allegations may have been false)).

**23.** *Id.* at 1232.

**24.** *See id.* at 1231 n. 11 (noting that plaintiff's subjective belief that defendants were conspiring against him was insufficient to create a genuine issue of material fact).

**25.** *Money v. Great Bend Packing Co.*, 783 F.Supp. 563, 574 (D.Kan.1992); *see also Witt v. Roadway Express*, 164 F.Supp.2d 1232 (D.Kan.2001) (conclusory statements of the nonmovant are not sufficient to survive summary judgment).

**26.** *See, e.g., Lundien v. United Airlines*, 242 F.3d 389, 2000 WL 1786579 (10th Cir.2000).

**27.** *Kendrick*, 220 F.3d at 1234.

**28.** *Murray v. City of Sapulpa*, 45 F.3d 1417, 1421 (10th Cir.1995) (citation omitted).

above, Plaintiff's only evidence is his subjective belief that his termination was motivated by racial animus. Plaintiff's feeling that he has been the victim of retaliation fails to demonstrate a genuine issue of fact absent supporting evidence. Plaintiff cannot establish any causal connection between protected activity and his termination, and cannot demonstrate that other workers violated similar rules, yet suffered less severe sanctions than he did. Defendant is entitled to summary judgment.

**Harassment:**

 In deciding whether or not a hostile environment existed, it is necessary to look to all the circumstances involved in the situation. These may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[29] The test of severity in hostile environment claims does not require that the offending conduct seriously affect plaintiffs' psychological well-being.[30] A claimant in a hostile environment harassment case must show that the environment would be reasonably perceived (objectively), and is perceived (subjectively), as hostile or abusive.[31] The determination of whether a hostile environment existed "is not, and by its nature cannot be, a mathematically precise test."[32]

 For a hostile environment claim to survive a summary judgment motion, "a plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[33] Plaintiff must produce evidence that he was the object of harassment.[34] Evidence of a general work atmosphere, as well as evidence of a specific hostility directed toward the plaintiff, is an important factor in evaluating the claim.[35] Plaintiffs must prove more than a few isolated incidents of racial enmity in hostile work environment cases.[36]

 Plaintiff states in his complaint that "[c]ommencing in 1999, the plaintiff in his position with Standard was subjected to unequal discipline and enforcement of policies with respect to absences, assessment of absences, demand to return to the floor, monitoring of work activities, docking of pay and harassment as a result of his status as an African American serving as union chairperson." Plaintiff alleges he was harassed because he had been assessed points for missing mandatory overtime that had been scheduled on a Saturday. Plaintiff was assessed five points for missing overtime. He was not on the floor when Steve Domann informed the other employees in the department of the overtime. The overtime was posted by the time clock and on the company bulletin board, pursuant to Defendant's procedure, but Plaintiff failed to see it. After complaining to management about the points assessed, the matter was resolved in his

---

**29.** *Nieto v. Kapoor,* 268 F.3d 1208, 1218 (10th Cir.2001) (citations omitted).

**30.** *Id.* at 1219 (citation omitted).

**31.** *Id.* at 1220 (citations omitted).

**32.** *Id.* (citation omitted).

**33.** *Penry v. Federal Home Loan Bank of Topeka,* 155 F.3d 1257, 1261 (10th Cir.1998) (citation omitted).

**34.** *Id.*

**35.** *Id.* at 1262 (citation omitted).

**36.** *Id.* at 1263 (citing *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1412 (10th Cir.1987)).

favor and Defendant removed the points from Plaintiff's attendance record.

Plaintiff alleges further harassment in the form of his supervisor monitoring his work activity and suggesting that Plaintiff spend more time on the plant floor working rather than conducting government business. Plaintiff states in his deposition that Defendant indicated that he had to decide whether he was going to be an employee and that he would not be excluded or excused for being a commissioner anymore and he would have to utilize the point system vacation, absentee monitoring system or whatever else he had to do to maintain the outside commissioner activities. Plaintiff is an elected commissioner for the Unified Government of Wyandotte County. Defendant entered into a special arrangement with Plaintiff in 1999 which allowed him to be out of the plant on government business without being assessed attendance points. Defendant's actions actually altered Plaintiff's work conditions favorably by allowing him time off for government business.

Plaintiff also states that Mr. Domann was monitoring him and docked his pay and assessed him points because he stayed at lunch too long. When asked who the other non African–Americans employees were that he alleges were not similarly harassed, he responded "that could be anybody and everybody." It is reasonable for Plaintiff's supervisor to be aware when any employee was away from his or her work area and the inquiries and comments made by his supervisor regarding his work activities are insufficient to support his claim of harassment. Plaintiff is unable to demonstrate the existence of any conduct which

pervaded the work environment that was so severe as to alter the conditions of his employment or that the alleged harassment was racially motivated. The Court is unable to conclude that a rational jury could find that Plaintiff's workplace was permeated with discriminatory intimidation. Thus, the Court need not address whether there is a basis for employer liability.[37] Defendant is entitled to summary judgment on Plaintiff's harassment claim.

**42 U.S.C. § 1985(3)—Conspiracy:**

■ Plaintiff's conspiracy claim does not set forth any factual allegations which support a claim under § 1985(1), preventing an officer from performing duties, or subsection (2), obstructing justice or intimidating a witness or juror. Therefore, his claim must be construed under subsection (3), which creates a cause of action against persons who conspire to deprive a person of equal protection or equal privileges and immunities. Plaintiff must prove: 1) the existence of a conspiracy for the purpose of depriving, directly or indirectly, Plaintiff's equal protection of the laws, or equal privileges and immunities under the laws; and 2) one or more of the conspirators committed some act in furtherance of the conspiracy, and Plaintiff thereby was injured in his person or property or was deprived of having and exercising any right or privilege as a citizen of the United States.[38]

■ The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.[39] Plaintiff claims there was a racially

---

**37.** See Ford v. West, 222 F.3d 767, 775 (10th Cir.2000) (stating that to survive summary judgment under Title VII, the record must support an inference of a racially hostile work environment *and* a basis for employer liability) (citation omitted).

**38.** Griffin v. Breckenridge, 403 U.S. 88, 102–03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

**39.** Griffin 403 U.S. at 102, 91 S.Ct. 1790.

motivated conspiracy to get rid of him and that the sexual harassment claims were made into a "black-white" issue. In support of this theory, Plaintiff states in his deposition "how come they didn't research and find any Mexican or black or African–American or Oriental women, per se, that was sexually harassed by me. And another thing to add into that, I feel that I was discriminated because if you have the packet that has the termination in there, it says that I previously discussed it, and I had no discussion or no knowledge of it until that day of the 20th as the records would reflect." When asked how they made it a black-white issue, he responded that "... I'm black and there's four white females ... [t]hey must not have talked to any others because if that would have been the case, then they should have maybe had more accusations."

 Conclusory allegations of conspiracy without supporting factual averments are insufficient to state a claim under § 1985(3).[40] Plaintiff's pleadings "must specifically present facts tending to show agreement and concerted action."[41] No evidence suggests the existence of a conspiracy nor any concerted action or agreement by Defendants. Plaintiff's conclusory allegations of conspiracy without factual averments are insufficient. Summary judgment is granted for Defendant on Plaintiff's conspiracy claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for Summary Judgment shall be GRANTED.

IT IS SO ORDERED.

---

**40.** *Dickerson v. Leavitt Rentals,* 995 F.Supp. 1242, 1248 (D.Kan.1998).

**41.** *Sooner Products v. McBride,* 708 F.2d 510, 512 (10th Cir.1983).