Leon S. COWAN, Plaintiff,

v.

UNIFIED SCHOOL DISTRICT 501, Shawnee County, Kansas, Defendant.

No. CIV.A.02–2255–CM.

United States District Court, D. Kansas.

Feb. 19, 2004.

Pantaleon Florez, Jr., Topeka, KS, for Plaintiff.

Evelyn Z. Wilson, Thomas E. Wright, David P. Mudrick, Wright, Henson, Clark & Baker LLP, Topeka, KS, for Defendant.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

Plaintiff brings suit against his current employer claiming that defendant discriminated against him on the basis of race by failing to promote him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Kansas Act Against Discrimination, ("KAAD"), K.S.A. § 44–1001 *et seq.*, and 42 U.S.C. § 1981. Pending before the court is defendant's Motion for Summary Judgment (Doc. 25).

### I. Facts

#### A. Plaintiff's Background and Coaching Qualifications

Plaintiff, who is African American, attended Topeka High School ("THS") from 1966 through 1969, where he was a football and basketball player. Plaintiff attended Butler County Community College on a football scholarship before transferring to the University of New Mexico, and then to Emporia State University where he graduated in 1974 with a bachelor's degree in physical education with a coaching emphasis. Plaintiff also holds a master's degree from Emporia State University.

Plaintiff accepted his first coaching-related position in 1975 at Northeast Junior High School in Kansas City, Kansas, where he was employed as a physical education teacher and football coach. Two years later, Northeast Junior High School closed, and plaintiff accepted a position at F.L. Schlagle in Kansas City, Kansas, as the assistant football coach, the junior varsity coach, and, later that year, the girls' basketball coach. Plaintiff worked at Schlagle for eight years and was successful in his position as girls' basketball coach, taking the team to the state tournament four of those years.

Plaintiff left Schlagle to serve as a traveling physical education teacher to elemen-

tary schools in the Kansas City area before moving to Topeka, in 1988, to accept a position at Eisenhower Middle School. Plaintiff initially acted as basketball coach and then also became football coach in 1990. Plaintiff remains employed at Eisenhower, where he is the head coach for track, boys' basketball, and girls' basketball.

## B. Defendant's Applications for High School Coaching Positions

### (1) Topeka High School–Football Coach

Plaintiff applied to be the football coach at THS in 2000, but he did not get an interview. Defendant selected Jimmy Collins, a Caucasian, for the position in April 2000.

### (2) Topeka High School–Boys' Basketball Coach

In 2000, Plaintiff applied and interviewed for the position of boys' basketball coach at THS. Plaintiff was familiar with several of the people conducting the interview, but he contends that he was not taken seriously because the outgoing boys' basketball coach was not involved in the interview. Defendant notified plaintiff by letter dated June 22, 2000, that he had not been selected for the position.

Instead, defendant hired Mike Henson, a Caucasian. Henson holds a bachelor's degree from Bethany College and a master's degree from Kansas State University. Henson was a teacher of German at McPherson High School at the time of his application; had taught from 1971 through 1995 and 1997 through 2000 at McPherson Junior High and Senior High; had taught at the John F. Kennedy School, Berlin, Germany from 1995 to 1997; and was Unified School District ("U.S.D.") 418 Teacher of the Year in 1992. Henson's coaching accomplishments include being basketball coach at McPherson High School for 12

years, with a record of 250 wins and 34 losses; and selection for Kansas Coach of the Year in 1986 and Kansas 5A Coach of the Year five times. Henson's teams have won four 5A state championships (going undefeated two of those years), and finished in second place three times and in fourth place three times; and won 10 Ark Valley League titles, and finished in second place one time and in third place one time.

### (3) Topeka High School–Girls' Basketball Coach

Plaintiff contends that he made a written application for the THS girls' basketball coach position during spring 2001. However, neither defendant nor plaintiff have any record of the application. Defendant did not interview plaintiff for the position.

Defendant interviewed four individuals for the position, one black male and three white males. Plaintiff asserts that he was not taken seriously for the position because defendant already had Larry Zientara, a Caucasian, in mind for the position. Defendant hired Zientara in spring 2001.

Zientara holds a bachelor's degree and master's degree and has been coaching since 1972. At the time Zientara applied for the position at THS, he had approximately 14 years of head coaching experience at the high school level and had been an assistant high school coach. Zientara had coached at two different high schools and had won a state championship at both schools. Zientara was selected as 6A Coach of the Year in Kansas and Tulsa Metro Coach of the Year while in Oklahoma.

### (4) Highland Park High School–Girls' Basketball Coach

In 2001, plaintiff interviewed for the position of Highland Park High School

("HPHS") girls' basketball coach. A mixed ethnicity selection committee interviewed plaintiff, two other African American candidates, and one Caucasian candidate. The selection committee chose Tony Turner, an African American, for the coaching position. Turner had been the assistant head coach for girls' basketball for the previous year and had been an assistant coach at the junior college level.

Defendant notified plaintiff that he had not been selected by letters dated May 8, 2001, and July 13, 2001.

## (5) Highland Park High School–Boys' Basketball Coach

In 2001, plaintiff interviewed for the position of HPHS boys' basketball coach. The same selection committee who selected the HPHS girls' basketball coach, with the exception of one member, interviewed plaintiff, two other African American candidates, and one Caucasian candidate. The selection committee chose Ken Darting, a Caucasian, for the position. Darting had eight years experience coaching high school varsity basketball, during which he won four league championships, five league tournaments, and one state title. Darting had also been a community college head men's coach for four years, a community college head women's coach for three years, a community college assistant coach for four years, a men's AAU coach for two years, and a JV coach for two years.

Defendant notified plaintiff by letter dated June 14, 2001, that he had not been selected for the position.

## (6) Topeka West High School–Boys' Basketball Coach

In 2001, plaintiff applied for the position of Topeka West High School ("TWHS") boys' basketball coach. Defendant selected three individuals for interviews, Chad Eshbaugh, a Caucasian; John Lewis, an African American; and John Windom, whose race is unknown. Eshbaugh, who obtained his bachelor's degree in 1996, had been head basketball coach since 1997 at Eudora High School, a 4A high school. At Eudora High, Eshbaugh taught social studies and, during his first year, was selected as Teacher of the Year. Lewis had experience as an assistant basketball coach, an assistant football coach, and head track coach, although Lewis had not served as a head basketball coach. Windom did not interview for medical reasons but had been a head basketball coach at the high school level for 16 years, coached as a graduate assistant at the college level, and coached for a European professional team for two years.

Aside from plaintiff, two other candidates were not granted interviews for the position. The first candidate, a Caucasian, had served as a junior varsity coach and assistant boys' basketball coach for seven years at the high school level, had been head basketball coach for four years at the middle school level, and had been assistant basketball coach at the middle school level for two years. The second candidate, a Caucasian, had one year of experience as the head basketball coach at the elementary and middle school levels.

Defendant notified Eshbaugh in June 2001 that he had not been selected for the position.

## C. Administrative Proceedings

Plaintiff filed a charge of discrimination in violation of Title VII, dated July 9, 2001, with the Kansas Human Rights Commission ("KHRC") and Equal Employment Opportunity Commission ("EEOC"). Plaintiff claimed that defendant had discriminated against him based on race by not hiring him to any of the head coaching positions to which plaintiff applied. By letter dated March 1, 2002, the EEOC summarized the results of its investigation

into plaintiff's claims. The EEOC stated that there was no basis to argue that defendant discriminated based upon race with respect to the position at HPHS because another black applicant, Turner, had been hired. The EEOC also concluded that it was unlikely that the EEOC could demonstrate that plaintiff was the best qualified candidate for the positions of girls' basketball coach at THS, boys' basketball coach at HPHS, or girls' basketball coach at HPHS. The EEOC issued a dismissal and notice of right to sue on March 6, 2002.

Plaintiff filed a charge of discrimination in violation of the KAAD, dated August 6, 2002, with the KHRC. Plaintiff alleged that defendant had discriminated against him from April 2000 to July 6, 2001, by selecting less qualified Caucasian candidates for head coaching positions. By letter dated April 23, 2002, the KHRC issued a determination of "No Probable Cause" regarding plaintiff's complaints.

Plaintiff filed his claim before this court on June 4, 2002.

## II. Legal Standards

### A. Summary Judgment

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71, 106 S.Ct. 2505. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671, 106 S.Ct. 2505 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut," rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## B. Discrimination Claims

■ The court evaluates plaintiff's failure-to-promote discrimination claims under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[1] A plaintiff must first establish a prima facie case by demonstrating that (1) he was a member of a protected class; (2) he applied for and was qualified for the position; (3) he was not promoted, or in this case, was rejected; (4) after being rejected, the position was filled or remained open. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000). If the plaintiff carries his burden of establishing a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. This stage of the framework "only requires that the defendant explain its actions against the plaintiff in terms that are not facially prohibited by Title VII." *E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1317 (10th Cir.1992). Once an employer has presented a non-discriminatory reason for its action, the burden shifts back to the plaintiff to show that the defendant's explanation was a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817.

To survive summary judgment at the third stage of the *McDonnell Douglas* framework, the plaintiff must offer evidence "that a discriminatory reason more likely motivated the employer or ... that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Randle v. City of Aurora*, 69 F.3d 441, 451–52 (10th Cir.1995). For example, "[e]vidence of pretext may include, but is not limited to, the following: prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating hiring criteria); and the use of subjective criteria." *Simms v. Okla. ex rel. Dep't of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1328 (10th Cir.1999). The plaintiff may also show pretext by exposing the " 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proferred legitimate reasons for its action [such] that a reasonable factfinder could rationally find them unworthy of credence.' " *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quoting *Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951–52 (3d Cir.1996)).

■ A plaintiff, however, must present specific facts demonstrating pretext. *Branson v. Price River Coal Co.*, 853 F.2d 768, 771–72 (10th Cir.1988). A plaintiff's "mere conjecture that ... [his] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Id.* at 772. Nor does a plaintiff's "opinion that the interviewers were wrong in their assessment of ... [his] qualifications" constitute facts that demonstrate pretext. *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1317 (10th Cir.1999). Finally, a plaintiff does not demonstrate pretext if an employer, using non-discriminatory criteria, makes a decision to hire from among comparably qualified candidates. *Id.* at 1319 ("Therefore, pretext cannot be shown simply by identifying minor differences between a plaintiff's qualifications and those of successful applicants.").

---

1. The *McDonnell Douglas* analysis applies to plaintiff's discrimination claims under Title VII, § 1981, and the KAAD. *See Lewis v. Std. Motor Prods., Inc.*, 203 F.Supp.2d 1228, 1233 n. 13 (D.Kan.2002) ("The standards are the same for Title VII, § 1981 and the KAAD").

### C. Administrative Remedies and Statute of Limitations

■ A plaintiff must exhaust his administrative remedies before bringing suit under Title VII and the KAAD. *Aramburu v. Boeing Co.,* 112 F.3d 1398, 1409 (10th Cir.1997). The filing of a charge of discrimination with the EEOC is a prerequisite to this court's jurisdiction. *Jones v. Runyon,* 91 F.3d 1398, 1399–1400 n. 1 (10th Cir.1996). In Kansas, a plaintiff must file an EEOC charge within 300 days after the alleged unlawful conduct occurs. *See* 42 U.S.C. § 2000e–5(e). Additionally, a plaintiff must exhaust his administrative remedies with the KHRC before filing a claim under the KAAD in this court. *Van Scoyk v. St. Mary's Assumption Parochial Sch.,* 224 Kan. 304, 306, 580 P.2d 1315 (1978). The complaint must be filed with the KHRC within six months after the alleged discriminatory act. Kan. Stat. Ann. § 44–1005(i).

■ There is no administrative exhaustion requirement for § 1981 claims, but, in Kansas, a plaintiff must bring an action within two years after the alleged discriminatory act. *Garcia v. Univ. of Kan.,* 702 F.2d 849, 851 (10th Cir.1983).

## III. Analysis

### A. Topeka High School–Football Coach

Defendant notified Collins that he had been selected as football coach at THS in April 2000. Plaintiff concedes that he did not file his claim with the EEOC or KHRC within the applicable time limit and that the statute of limitations has run on his § 1981 claim. The court therefore dismisses plaintiff's discrimination claim against defendant for failing to hire him as football coach at THS.

### B. Topeka High School–Boys' Basketball Coach

■ Defendant notified plaintiff by letter dated June 22, 2000, that he had not been selected for the position of boys' basketball coach at THS. Plaintiff concedes that he did not file his claim with the EEOC or KHRC within the applicable time and that only his claim under § 1981 remains.

Defendant concedes that plaintiff makes a prima facie claim of discrimination, but defendant asserts that it had a legitimate, nondiscriminatory reason for hiring Henson. Defendant asserts that it hired Henson based upon his record of accomplishment, which included a record of 250 wins and 34 losses over 12 years as head boys' coach at McPherson High School; 1986 Kansas Coach of the Year; five time recipient of Kansas 5A Coach of the Year; four 5A state championships, with three second place and three fourth place finishes; ten Ark Valley League titles, with one second place and one third place finish. Henson has a master's degree, taught German at McPherson High School, was U.S.D. 418 Teacher of the Year in 1992, and taught at the John F. Kennedy School in Berlin, Germany from 1995 to 1997.

Plaintiff asserts that his own record of accomplishments demonstrates that defendant's proffered explanation for hiring Henson is a pretext to discrimination. Plaintiff was head girls' basketball coach at Schlagle for eight years, where his team won two league championships and three regional championships and appeared at the state tournament three times. Plaintiff also has a master's degree and teaches physical education.

The court concludes that no reasonable jury could find "unworthy of credence" defendant's explanation that it hired Henson based upon his record of accomplishment. Indeed, no reasonable jury could

find that plaintiff's record is superior to Henson's.

## C. Topeka High School–Girls' Basketball Coach

Plaintiff's claim that defendant did not hire him for the position of THS girls' basketball coach because of his race begins with a problem of proof. Plaintiff offers no evidence, other than his own assertion, that he applied for the position, and defendant has no record of such an application being made. Nevertheless, viewing "the record in the light most favorable" to plaintiff, the court will assume that plaintiff applied for the position.

■ Defendant concedes that plaintiff makes out a prima facie case but asserts that Zientara was hired because he was the most qualified candidate. Zientara had a master's degree and had been coaching since 1972. At the time of his application, Zientara had served as a head coach at the high school level for approximately fourteen years. Zientara had also been recognized as Kansas 6A Coach of the Year and Tulsa Metro Coach of the Year.

Plaintiff argues that his own record of accomplishment demonstrates that he was the most qualified candidate, and, therefore, that defendant's proffered explanation is pretext for discrimination.

The court concludes, however, that no reasonable jury could find that defendant's explanation is "unworthy of credence," or even find that plaintiff is the most qualified candidate.

## D. Highland Park High School–Girls' Basketball Coach

■ Plaintiff interviewed for the position of HPHS girls' basketball coach in spring 2001, but defendant hired Turner.

Defendant concedes that plaintiff has established a prima facie case of discrimination,[2] but defendant asserts that it had a legitimate, nondiscriminatory reason for hiring Turner. Defendant contends that it hired Turner because he had been the HPHS assistant girls' basketball coach during the previous year and had been an assistant basketball coach at the junior college level.

Plaintiff asserts that his own record is superior to Turner's, which demonstrates evidence of pretext in defendant's proffered reason. However, "pretext cannot be shown simply by identifying minor differences between plaintiff's qualifications and those of successful applicants." *Bullington,* 186 F.3d at 1319. To establish evidence of pretext, the disparity in the candidates' qualifications must be " 'overwhelming.' " *Id.* (quoting *Sanchez v. Philip Morris,* 992 F.2d 244, 247–48 (10th Cir. 1993)). That is, the "difference in qualifications of applicants must be so apparent as 'to jump off the page and slap us in the face' to support a finding of pretext." *Id.* (quoting *Odom v. Frank,* 3 F.3d 839, 847 (5th Cir.1993)).

The court concludes that no reasonable jury would find that plaintiff has established pretext by showing that there was an "overwhelming" disparity between his resume and Turner's. Plaintiff had coached for eight years at the high school level, but he served in this position nearly seventeen years prior to his application to HSHS. In the interim, his coaching experience has been at the middle school level. Turner's more recent experience coaching as an assistant at the high school and junior college level made him, at the least, as qualified as plaintiff. Therefore, defendant's choice between two similarly

---

**2.** Turner is also African American, but plaintiff need not show that the person hired to fill the position was outside a protected class in order to establish a prima facie case of discrimination. *Kendrick,* 220 F.3d at 1228–29.

qualified candidates does not raise the inference of racial discrimination.[3] *See Bullington,* 186 F.3d at 1319.

### E. Highland Park High School–Boys' Basketball Coach

■ In spring 2001, plaintiff interviewed for the position of HPHS boys' basketball coach, but defendant hired Darting to fill the opening. Defendant concedes plaintiff's prima facie case of discrimination, but asserts that it had nondiscriminatory reasons for its choice. Defendant contends that it hired Darting because he had been head coach at Silver Lake High School; had eights years of experience coaching at the high school level, during which he won one state championship, four league championships, and five league tournaments; had been head coach at Allen County Community College for four years and assistant coach for four years; had been a community college head womens' coach for three years; had been a men's AAU coach for two years; and had been a high school boys' junior varsity coach for two years. Darting was also an all-state athlete in four sports and had been an assistant to Jack Hartman, former head basketball coach at Kansas State University.

Plaintiff attempts to counter defendant's proffered explanation by asserting that his record is "surprisingly similar" to Darting's. Even if the evidence could be stretched far enough to favor plaintiff's averment, the court would still conclude that plaintiff has not demonstrated pretext or that defendant's explanation is not believable. As the *Bullington* court concluded, an employer's choice between two equivalent candidates does not provide evidence of pretext. *See Bullington,* 186 F.3d at 1319.

### F. Topeka West High School–Boys' Basketball Coach

■ Plaintiff applied for the position of TWHS boys' basketball coach but was not granted an interview. Defendant notified Eshbaugh in June 2001 that he had been selected to fill the position.

Defendant concedes plaintiff's prima facie case but asserts that it had a nondiscriminatory reason for choosing the individuals interviewed for the position. Defendant asserts that it interviewed Windom because he had sixteen years of head coaching experience at the high school level, had coached on a European professional team for two years, and had served as graduate assistant at the college level for one year. Defendant contends that it interviewed Eshbaugh because he had been a head basketball coach for the four previous years at a 4A high school, had a bachelor's degree, was selected as Teacher of the Year at the high school, and taught social studies. Defendant also interviewed Lewis because, defendant asserts, he had experience as an assistant high school basketball coach and was the assistant coach at TWHS, was assistant football coach, and was head track coach. Aside from plaintiff, defendant did not interview two other candidates; one whose experience was as an assistant or junior varsity coach at the high school level and head coach at

---

3. Plaintiff also asserts that defendant's decision to hire Turner, who was a Rule 10 coach, demonstrates pretext. Rule 10 of the Kansas State High School Activities Association provides an avenue for schools to hire coaches who are not certified teachers. Rule 10 provides that a certified teacher "is eligible to coach in any activity," but nowhere does Rule 10 require that certified teachers be hired or state that certified teachers should be given preference in hiring. Moreover, plaintiff offers no evidence to support his interpretation that Rule 10 requires that he be awarded the position or that defendant's choice of Turner creates an inference of discrimination against plaintiff.

the middle school level; and one who was a head coach at the middle school level.

Plaintiff asserts that defendant's decision to interview Lewis, who is African American, raises the inference of pretext. Defendant contends that it interviewed Eshbaugh and Windom because they were head coaches at the high school level at the time of they applied for the position at TWHS. Nevertheless, defendant asserts that it decided to interview Lewis because he was the current assistant boys' basketball coach at TWHS.

 Defendant's decision to interview Eshbaugh and Windom and eventually hire Eshbaugh does not present the inference of discrimination because both candidates were either more qualified or as qualified as plaintiff. *See Bullington,* 186 F.3d at 1319. However, the court concludes that plaintiff has raised a sufficient inconsistency in defendant's proffered explanation for interviewing Lewis such that a reasonable fact finder could find the explanation "unworthy of credence." Although Lewis is African American, the law of this circuit does not require plaintiff to demonstrate that an alternate candidate was outside plaintiff's protected class in order to establish a prima facie case in a failure-to-hire discrimination claim. *See Amro v. Boeing Co.,* 232 F.3d 790, 796 (10th Cir.2000) ("The plaintiff is not required to show that . . . [the position] was filled by someone outside the plaintiff's protected class."); *Kendrick,* 220 F.3d at 1228–29 (same). Combined, therefore, with defendant's inconsistent explanation of its reason for choosing interview candidates, plaintiff's case cannot be dismissed at the summary judgment stage. Therefore, in light of current Tenth Circuit case law as set out in *Kendrick,* 220 F.3d at 1228–29, plaintiff's case against defendant is allowed to proceed with respect to defendant's decision to interview Turner, but not plaintiff, for the head coaching position at TWHS.

## IV. Order

**IT IS THEREFORE ORDERED** that defendant's Motion for Summary Judgment (Doc. 25) is granted in part and denied in part. Summary judgment is granted as to each of plaintiff's claims, with the exception of plaintiff's claim against defendant for its decision to interview Turner.